**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| JUDY WANG, derivatively on behalf of TRAVELZOO, INC., | Civil Action No. 1:11-CV-06125-GBD |
| Plaintiff, | |
| v. | |
| RALPH BARTEL, HOLGER BARTEL, WAYNE LEE, DAVID J. EHRLICH, DONOVAN NEALE-MAY, KELLY M. URSO, and CHRISTOPHER LOUGHLIN, | |
| Defendants, | |
| and | |
| TRAVELZOO, INC., | |
| Nominal Defendant. | |

| | |
|---|---|
| ANTHONY A. WIRTH, derivatively on behalf of TRAVELZOO, INC., | Civil Action No. 1:11-CV-06378-BSJ-RLE |
| Plaintiff, | |
| v. | |
| RALPH BARTEL, CHRISTOPHER LOUGHLIN, KELLY M. URSO, HOLGER BARTEL, DAVID J. EHRLICH, DONOVAN NEALE-MAY, and, WAYNE LEE, | |
| Defendants, | |
| and | |
| TRAVELZOO, INC., | |
| Nominal Defendant. | |

(continued)

# PLAINTIFFS JUDY WANG'S AND KEVIN KITT'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO CONSOLIDATE RELATED ACTIONS AND APPOINT LEAD COUNSEL AND LIAISON COUNSEL

| | |
|---|---|
| KEVIN KITT, derivatively on behalf of TRAVELZOO, INC., | Civil Action No. 1:11-cv-7019 (GBD) |
| Plaintiff, | |
| v. | |
| RALPH BARTEL, HOLGER BARTEL, WAYNE LEE, DAVID J. EHRLICH, DONOVAN NEALE-MAY, KELLY M. URSO, and CHRISTOPHER LOUGHLIN, | |
| Defendants, | |
| and | |
| TRAVELZOO, INC., | |
| Nominal Defendant. | |

Plaintiffs Judy Wang and Kevin Kitt respectfully submit this Memorandum Of Law in support of their motion for an order: (1) pursuant to Fed. R. Civ. P. 42(a) for consolidation of the above-captioned related cases; and (2) for the appointment of The Weiser Law Firm, P.C. (the "Weiser Firm") as plaintiffs' Lead Counsel and Harwood Feffer LLP ("Harwood Feffer") as Liaison Counsel.

## I. FACTUAL BACKGROUND

According to its public filings, Travelzoo is an Internet media company that publishes travel and entertainment offers from various travel and entertainment companies in North America and Europe. ¶ 1.[1] Beginning in April 2011, Defendants[2] caused the Company to issue a series of materially false and misleading statements regarding the Company's business,

---

[1] All citations are to Plaintiff Wang's Shareholder Derivative Complaint filed in this Court on August 31, 2011 (the "Complaint") and shall appear in the following format: "¶__."

[2] "Defendants" include Ralph Bartel ("R. Bartel"), Holger Bartel ("H. Bartel"), Wayne Lee ("Lee"), David J. Ehrlich ("Ehrlich"), Donovan Neale-May ("Neale-May"), Kelly M. Urso ("Urso"), and Christopher Loughlin ("Loughlin").

operations, management, and the intrinsic value of its stock. ¶ 2. Specifically, Defendants failed to disclose: (a) that their "growth plan" could not continue without Travelzoo incurring higher-than-announced costs and expenses; (b) that increased competition and lower-than-expected sales in the Company's business segments was reducing growth; (c) that marketing and administrative expenses were escalating at unprecedented levels; (d) that the Company lacked adequate internal controls systems; and (e) that there was no reasonable basis to claim Travelzoo was operating according to plan or could achieve the guidance provided by Defendants. *Id.*

This, in turn, allowed certain top Company insiders to collectively sell approximately *$188 million* worth of Travelzoo stock they either held personally or controlled. ¶ 3. The overwhelming majority of these sales, as discussed further below, were attributable to defendant R. Bartel, or entities he controls. *Id.*

On April 21, 2011, Defendants caused the Company to issue a press release announcing better than expected, "record" financial results for the first quarter of 2011. ¶ 4. Among other things, Defendants touted record revenues and adjusted operating income, claimed that subscriber growth was "the second best performance in the company's history," that North American revenues grew at the fastest pace in 4 years, and that "Europe saw the highest quarterly subscriber growth ever and returned its first significant quarterly profit." *Id.* Immediately after the issuance of this press release, the Company's stock price rose by nearly $20 per share to a price of nearly $94 per share. *Id.*

On April 25, 2011, defendant Urso, a director of the Company, sold 9,000 shares of Company stock for over $900,000 in proceeds. ¶ 5. Then, between April 26, 2011 and April 29,

2011, defendant R. Bartel (individually and/or through entities he controlled) [3] sold over 625,000 shares of Company stock for proceeds of over **$55 million**. *Id.* Likewise, on May 2, 2011, Travelzoo's Chief Executive Officer ("CEO"), defendant Loughlin, sold over 12,500 shares for proceeds of just over $1 million. *Id.*

On May 10, 2011, Defendants caused the Company to file the Company's quarterly report on Form 10-Q and made substantially similar positive public representations regarding the Company's operations, including expenses, costs, and ratios. ¶ 6. Again, between May 25, 2011 and June 3, 2011, defendant R. Bartel sold nearly 1.7 million shares of Company stock for nearly **$123 million**. *Id.* Also, on June 15, 2011, he sold another 131,000 shares for proceeds of nearly **$7.8 million**. *Id.*

On July 21, 2011, Defendants first revealed that the Company was, in fact, performing well below expectations, with costs and expenses well above plan, and with revenues well below. ¶ 7. Specifically, the Company's results in the second quarter of 2011 were hurt by higher costs and lower-than-expected growth in the Company's European newsletter business. *Id.* Operating expenses grew by 33%. *Id.* On this news, the Company's stock price fell by approximately $30 in one day, or almost **35%**, to close at $56 per share. *Id.*

Critically, during the Relevant Period, Travelzoo was (and remains) a "controlled company" because Azzurro, a company which R. Bartel 100% owns, held approximately 10.9 million shares of Company stock through the Bartel Trust, representing about 66% of the Company's outstanding shares as of March 31, 2011. ¶ 8. Additionally, the price of the

---

[3] Throughout the Complaint, defendant R. Bartel's sales include both sales he made individually and through Azzuro Capital, Inc. ("Azzurro"), which he 100% owns. Azzurro holds and sells stock through the "Ralph Bartel 2005 Trust" (the "Bartel Trust").

Company's stock still had not recovered at the time of the filing of the Complaint and was trading for around $33 per share. ¶ 9.

## II. PROCEDURAL HISTORY

Currently, there are three shareholder derivative actions filed on behalf of Travelzoo against certain of the Company's current and former officers and directors pending in this Court, both relating to the above-discussed facts. On August 31, 2011, plaintiff Wang filed the Complaint on behalf of nominal defendant Travelzoo (Civil Action No. 1:11-CV-05531-GBD) on diversity jurisdiction grounds. On September 13, 2011, plaintiff Anthony A. Wirth ("Wirth") filed the second shareholder derivative complaint on behalf of nominal defendant Travelzoo (Civil Action No. 1:11-CV-06378-BSJ-RLW), also on diversity jurisdiction grounds.[4] On October 5, 2011, plaintiff Kevin Kitt ("Kitt") filed the third shareholder derivative complaint on behalf of nominal defendant Travelzoo (Civil Action No. 1:11 cvb-7019-GBD). The *Kitt* action also seeks relief under the Securities Exchange Act of 1934.[5]

Plaintiffs in the Actions allege similar causes of action on behalf of Travelzoo against the same Defendants, and each action arises out of the same nucleus of operative facts. Therefore, plaintiffs Wang and Kitt seek to consolidate the Actions. As argued below, the Actions cannot progress further until a leadership structure identifying the Lead Counsel, who has the authority to prosecute the Actions, is established.

---

[4] On October 5, 2011, counsel for Defendants requested that the *Wirth* action be transferred to Judge Daniels.

[5] Collectively, the *Wang* action, the *Wirth* action, and the *Kitt* action shall be referred to herein as the "Actions."

## III. LEGAL ARGUMENT

### A. Consolidation Of The Actions

Plaintiffs Wang and Kitt request that this Court consolidate the Actions. Rule 42(a) of the Federal Rules of Civil Procedure governs consolidation and provides the following:

> If actions before the court involve a common question of law or fact, the court may:
>
> (1) join for hearing or trial any or all matters at issue in the actions;
>
> (2) consolidate the actions; or
>
> (3) issue any other orders to avoid unnecessary cost or delay.

*Id.*

The power to consolidate related actions falls within the broad inherent authority of every court "'to control disposition of the causes on its docket with economy of time and effort for itself, for counsel and for litigants.'" *Lester-Krebs, Inc. v. Geffen Records, Inc.*, No. 85 Civ. 6320, 1985 U.S. Dist. LEXIS 13201, at *4 (S.D.N.Y. Dec. 4, 1985) (quoting *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936)). A court has discretion to consolidate related cases which involve common questions of fact and law under Rule 42(a) "under the policy that considerations of judicial economy strongly favor simultaneous resolution of all claims growing out of one event . . . ." *Ikerd v. Lapworth*, 435 F.2d 197, 204 (7th Cir. 1970); *see also Schriver v. Impac Mortgage Holdings, Inc.*, No. SACV 06-31 CJC (RNBx), 2006 U.S. Dist. LEXIS 40607, at *5 (C.D. Cal. May 1, 2006), *dismissed on other grounds*, 554 F. Supp. 2d 1083 (C.D. Cal. 2008).

Courts have indeed recognized that consolidation of similar shareholder actions can be beneficial to the Court and the parties by "'expediting pretrial proceedings, avoiding duplication . . . and minimizing expenditure of time and money . . . .'" *In re Equity Funding Corp. of Am. Sec. Litig.*, 416 F. Supp. 161, 176 (C.D. Cal. 1976) (citation omitted); *see also MacAlister v. Guterma*, 263 F.2d 65, 68 (2d Cir. 1958) ("[t]he purpose of consolidation is to permit trial

convenience and economy in administration"); *Takeda v. Turbodyne Techs., Inc.*, 67 F. Supp. 2d 1129, 1133 (C.D. Cal. 1999), *dismissed on other grounds sub nom., In re Turbodyne Techs. Sec. Litig.*, 2000 U.S. Dist. LEXIS 23020 (C.D. Cal. Mar. 15, 2000) (consolidation pursuant to Fed. R. Civ. P. 42(a) eases the burden on all parties involved). "[W]hen consolidation is appropriate, the Court has the discretion to order the consolidation of subsequently-filed or transferred cases that allege similar facts as those alleged in the current shareholder derivative suits." *Horn v. Raines*, 227 F.R.D. 1, 2 (D.D.C. 2005) (ordering consolidation of all related derivative actions); *Schriver*, 2006 U.S. Dist. LEXIS 40607, at *6.

Here, consolidating the Actions will no doubt aid the convenience of the Court to decide these cases. The Actions present substantially identical issues and relate to whether Travelzoo's directors and certain senior officers breached their fiduciary obligations to the Company and its stockholders. As a result, each individual case will involve essentially the same motion practice, discovery, and trial considerations. In addition, no "substantial rights" of any party will be prejudiced by consolidation. In fact, the rights of the parties to a speedy discovery process, consistent adjudications, and cooperative discovery efforts will enhance all parties' rights to a fair and equitable adjudication of their dispute. Accordingly, the Actions should be consolidated.

**B.  The Court Should Appoint The Weiser Firm As Lead Counsel And Harwood Feffer As Liaison Counsel**

**1.  Appointment of Lead Counsel and Liaison Counsel Is Necessary to Effectively Prosecute the Consolidated Action**

Plaintiffs Wang and Kitt respectfully request that this Court appoint the Weiser Firm as Lead Counsel and Harwood Feffer as Liaison Counsel. A court which has consolidated actions may, at its discretion, appoint Lead and Liaison Counsel to prosecute the consolidated cases. 9 Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 2385 (2d ed. 1987),

*cited in Walker v. Deutsche Bank, AG*, No. 04 Civ. 1921 (DAB), 2005 U.S. Dist. LEXIS 19776, at *8 (S.D.N.Y. Sept. 6, 2005). *MacAlister v. Guterma, supra,* is the seminal case on this point. In that case, the Second Circuit recognized that "[t]he benefits achieved by consolidation and the appointment of general counsel, *i.e.* elimination of duplication and repetition and in effect the creation of a coordinator of diffuse plaintiffs through whom motions and discovery proceedings will be channeled, will most certainly redound to the benefit of all parties to the litigation." 263 F.2d at 69.

Moreover, the *Manual for Complex Litigation* recognizes the benefits of appointing Lead Counsel in complex, multiparty litigation:

> Complex litigation often involves numerous parties with common or similar interests but separate counsel. Traditional procedures in which all papers and documents are served on all attorneys, and each attorney files motions, presents arguments, and examines witnesses, may waste time and money, confuse and misdirect the litigation, and burden the court unnecessarily. Instituting special procedures for coordination of counsel early in the litigation will help to avoid these problems.

*Manual for Complex Litigation* (Fourth) §10.22 (4d ed. 2004).

### 2. The Weiser Firm Should Be Appointed as Lead Counsel

Plaintiffs have selected the Weiser Firm to serve as Lead Counsel. In selecting Lead Counsel, the "'guiding principle'" is who will "'best serve the interest of the plaintiffs.'" *Millman v. Brinkley*, No. 1:03-cv-3831-WSD, 2004 U.S. Dist. LEXIS 20113, at *9 (N.D. Ga. Oct. 1, 2004). The criteria for selecting Lead Counsel include its experience and prior success record, the number, size, and extent of involvement of represented litigants, the stage of the proceedings in a particular suit, and the nature of the causes of action alleged. *Id.* (citations omitted). In making a selection, some courts have also considered the quality of the pleadings that have been filed as a factor to be weighed. *See, e.g., Dollens v. Zionts*, No. 01 C 5931, 2001

U.S. Dist. LEXIS 19966, at *6 (N.D. Ill. Dec. 4, 2001). Each of these factors weighs strongly in favor of appointing the Weiser Firm as Lead Counsel.

The Weiser Firm has a sterling reputation in the field of shareholder litigation, and its principals have been involved in some of the most successful shareholder derivative actions in the United States, including cases (like the Actions) involving situations where a company's board of directors and executive officers breach their fiduciary duties to the company and its shareholders. *See* Declaration of Robert B. Weiser filed contemporaneously herewith at 3. Accordingly, the Weiser Firm is clearly capable and well-suited to serve as Lead Counsel in these complex stockholder derivative Actions.

Moreover, the Weiser Firm has vigorously advanced this litigation to date. Most notably, the *Wang* Action was the first shareholder derivative action initiated on behalf of Travelzoo. This factor weighs heavily in favor of appointing the Weiser Firm as Lead Counsel. In sum, the Weiser Firm has served, and will continue to serve, the best interests of all derivative plaintiffs and the Company and should be appointed Lead Counsel.

### 3. Harwood Feffer Should Be Appointed Liaison Counsel

Finally, Plaintiffs have selected Harwood Feffer to serve as Liaison Counsel. Harwood Feffer regularly appears in this Court, maintains offices in New York, New York, and will be able to efficiently communicate with the Court and all parties as Liaison Counsel. The *Manual for Complex Litigation* recognizes that:

> *Liaison Counsel.* Charged with essentially administrative matters, such as communications between the court and other counsel (including receiving and distributing notices, orders, motions, and briefs on behalf of the group), convening meetings of counsel, advising parties of the developments, and otherwise assisting in the coordination of activities and positions. Such counsel may act for the group in managing document depositories and in resolving scheduling conflicts. Liaison counsel will usually have offices in the same locality as the court.

*Manual for Complex Litigation* (Fourth), *supra* §10.221.

Based on Harwood Feffer's substantial experience in representing plaintiffs in shareholder litigation, the firm's proven ability to work with other attorneys across the country in complex litigation, and their familiarity with the local rules and procedures of the Southern District of New York, it is apparent that Harwood Feffer is superbly qualified to serve as Liaison Counsel. This Court should therefore appoint Harwood Feffer as Liaison Counsel.

## IV. CONCLUSION

For the foregoing reasons, the Court should consolidate the above-captioned actions and appoint the Weiser Firm as Lead Counsel and appoint Harwood Feffer as Liaison Counsel.

Dated: October 11, 2011

**HARWOOD FEFFER LLP**

By: _____
Robert I. Harwood
Daniella Quitt
488 Madison Avenue, 8th Floor
New York, NY 10022
Telephone (212) 935-7400
Facsimile: (212) 753-3630

Attorneys for Plaintiffs Judy Wang
  and Kevin Kitt

**THE WEISER LAW FIRM, P.C.**
Robert B. Weiser
Brett D. Stecker
Jeffrey J. Ciarlanto
Joseph M. Profy
121 N. Wayne Avenue, Suite 100
Wayne, PA 19087
Telephone: (610) 225-2677
Facsimile: (610) 225-2678

**RYAN & MANISKAS, LLP**
Katherine M. Ryan
Richard A. Maniskas
995 Old Eagle School Rd., Suite 311
Wayne, PA 19087
Telephone: (484) 588-5516
Facsimile: (484) 450-2582

Attorneys for Plaintiff Judy Wang